1

2

3

4

5

6

7

8                         IN THE UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ANDREW R. LOPEZ,

11              Plaintiff,                      No. CIV S-03-1605 GEB DAD P

12        vs.

13   S. COOK, et al.,                          ORDER AND

14              Defendants.                     FINDINGS AND RECOMMENDATIONS

15   _____/

16              Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Before the court is plaintiff's motion for summary judgment.  Defendants

18   have filed their opposition to the motion and plaintiff has filed a reply.[1]

19                                     BACKGROUND

20              On July 17, 2003, plaintiff commenced this action by filing his complaint in the

21   Fresno Division of this court alleging that defendants violated his constitutional rights while he

22   _____

23        [1] Defendants have subsequently moved for summary judgment in their favor with respect
     to all of plaintiff's remaining claims.  That motion will be addressed in separate findings and
24   recommendations.  On December 5, 2007, plaintiff filed a notice of intent to file opposition to
     defendants' motion for summary judgment which the court has construed as a motion for an
25   extension of time in which to file that opposition.  The motion will be granted and plaintiff's
     opposition to defendants' motion for summary judgment, subsequently filed on December 19,
26   2007, will be deemed timely.

                                              1

1   was incarcerated at California's High Desert State Prison.  On July 30, 2003, the action was

2   transferred to the Sacramento Division of the court and assigned the case number reflected in the

3   caption.  After several orders dismissing plaintiff's complaints with leave to amend, on October

4   6, 2004, plaintiff filed his third amended complaint which is the operative complaint in this

5   action.

6          On November 4, 2005, the court authorized service of that third amended

7   complaint on nineteen defendants named therein.  On that same date the undersigned

8   recommended that plaintiff's third, fourth, seventh, eleventh, thirteenth and twenty-first causes of

9   action as well as his Fourteenth Amendment claim set forth in the eighth, ninth and tenth causes

10  of action of his third amended complaint be dismissed for failure to state a cognizable claim or as

11  duplicative and that defendants Woodford and Drew be dismissed.  On December 7, 2005, the

12  assigned district judge adopted those findings and recommendations.  On November 14, 2006,

13  the undersigned recommended that plaintiff's claims against defendants Farris, Singletary and

14  Hansen be dismissed without prejudice due to plaintiff's failure to comply with the court's order

15  regarding submission of document necessary to effect service on those defendants.  On March

16  14, 2007, the assigned district judge adopted those findings and recommendations.

17                            PLAINTIFF'S REMAINING CLAIMS

18          In his third amended complaint, plaintiff presents twenty-one causes of action and

19  names twenty-two defendants.  As noted above, five defendants and six causes of action have

20  been dismissed pursuant to prior orders of the court.  This action is now proceeding only against

21  the following defendants:  Adams, Babich, Bartos, Cook, Garate, Gilliam, Harrison, Holmes,

22  Johnson, Martinez, McClure, McKean, Morton, Nergenah, Shaver, Statti, and Vanderville.

23          Plaintiff's remaining substantive claims are the following.  First, plaintiff claims

24  that he was retaliated against for filing a civil rights lawsuit in 1994, submitting administrative

25  grievances while imprisoned and engaging in jailhouse lawyering activities.  Plaintiff contends

26  that in retaliation for his engaging in this protected conduct, prison officials placed him in

2

administrative segregation, validated him as a gang associate and placed him in a security housing unit (S.H.U.), denied him access to documents needed to challenge his confinement in administrative segregation, lost or denied his inmate appeals, coerced other inmates to fabricate evidence for use in validating plaintiff as a gang associate and threatened plaintiff's safety.[2] Second, plaintiff alleges that the gang validation determination in his case was unsupported, the evidence relied upon was fabricated and based on false statements, he did not receive administrative review of the determination, was denied both an opportunity to present his views and the evidence needed to defend himself and was denied meaningful classification reviews all in violation of his right to due process. Third, plaintiff alleges that defendants have conspired to deprive him of his constitutional rights. In this regard, plaintiff contends that because of engaging in protected conduct, he was placed in administrative segregation on February 2, 2000, under the "false pretext" that there was pending investigation of his gang affiliation. (Compl. ¶ 49 at 3.) Plaintiff alleges this was done so that defendants could conspire to fabricate evidence against him. (Id.) Fourth, plaintiff alleges that defendants violated the California Constitution by placing and retaining him in administrative segregation, failing to provide him due process and equal protection and by suspending his "habeas corpus guarantees[.]" (Third Am. Compl. (Compl.), ¶¶ 127-132 at 17.)

THE PARTIES' ARGUMENTS AND EVIDENCE

Plaintiff's motion for summary judgment consists of his notice of motion, his document titled, "Plaintiff's Request for Summary Judgment in his favor; and, for this court to utilize its Authorized Discretion and Request Counsel from its Pro Bono list to assist" which includes a memorandum of points and authorities, plaintiff's 135-paragraph long statement of

---

[2] Plaintiff also contends that in retaliation for engaging in protected conduct, his legal property was stolen and the theft was covered-up by correctional officer Singletary who allegedly signed a false affidavit contending that plaintiff had received all of his property. However, as noted above, officer Singletary has been dismissed from this action. For this reason, the court will not address any claim of retaliation brought by plaintiff against officer Singletary.

1   undisputed facts, and plaintiff's own 124-paragraph long declaration with 101 exhibits attached

2   thereto.  Plaintiff asserts that the evidence he has submitted in support of his motion:

3           indisputably shows he was placed and retained in [a]dministrative
            segregation on the facially false pretexts and in violation of due
4           process.  Further, that conspiracy and retaliation [sic] claims are
            circumstantially supported by the evidence.

5

6   (Pl's Request for Summary Judgment (MSJ) at 1.)

7           Defendants have opposed plaintiff's motion for summary judgment.  That

8   opposition includes a memorandum of points and authorities, a 34-page response to plaintiff's

9   statement of undisputed facts and seventeen declarations from various defendants.  In short,

10  defendants argue that plaintiff has failed to demonstrate that he is entitled to judgment as a matter

11  of law with respect to any of his remaining claims and that the evidence presented by defendants

12  establishes that none of their actions resulted in a violation of plaintiff's constitutional rights.

13          The evidence submitted by the parties in connection with plaintiff's motion for

14  summary judgment establishes the following facts.  On June 7, 1994, plaintiff filed a § 1983 civil

15  rights action against Deuel Vocational Institution (DVI) employee, G. Lynn Hada.  See Lopez v.

16  Hada, CIV S-04-0891 FCD JFM P.  On October 7, 1994, plaintiff was transferred from DVI to

17  California State Prison - Sacramento (CSP-Sacramento) and on January 14, 1997,  was

18  transferred from CSP-Sacramento to High Desert State Prison, where the events underlying this

19  action allegedly occurred.

20          Between his arrival at High Desert State Prison in 1997 to May 2, 2000, plaintiff

21  filed at least 43 inmate grievances.  He also filed a complaint with the Office of the Inspector

22  General alleging that some of his administrative appeals were not answered.  At classification

23  hearings held on September 28, 1999 and November 9, 1999, plaintiff was recommended for

24  transfer to a level 3 facility.

25  /////

26  /////

On January 2, 2000, plaintiff received a rules violation report (Log No. FA-99-12-023) charging him with delaying a peace officer.  The charge was issued by defendant McKean and reviewed and approved by defendant Garate.  The rules violation report alleged as follows:

> On December 10, 1999, at approximately 1635 hours, while working as "A4 Floor Officer #1" I was requested by "A-4 Control Officer" McFarland to lock up inmate Lopez . . . and inmate Norman. . . .  Prior to Correctional Officer McFarland asking me to assist I overheard Correctional Officer McFarland instruct both inmates via the "Public Address System" several times to lock it up as showers had ended.  As I came out of the building office I observed inmates Lopez and Norman talking with an inmate in cell #225 and not paying any attention to the control officers instructions.  I proceeded up to the cell and instructed both inmates, Lopez and Norman, to lock up as it was count time.  Norman started toward his cell while Lopez stepped towards me and stopped in front of me at a very close distance.  Lopez then started arguing in a very loud manner that he was talking to his brother and that he was not a punk kid to be yelled at.

> Lopez further stated that us, meaning the officers, were not being fair to the "northern Hispanics" on showering and that he would lock it up when he was ready.  As I continued to talk with Lopez in a calm manner I could see that Lopez was very agitated.  Lopez would continue to argue with me and at times taking steps toward me even though I would back up one or two steps for my own safety zone.  Lopez continued to argue with clenched fists down to his side and in somewhat of a "Bladed Stance" as if ready to fight.  After seeing that this might possibly lead to a physical altercation I told Lopez to finish his conversation and meet me in my office.

> After a few moments Lopez came into my unit office and appeared somewhat calmed down.  At this time I explained to Lopez if (2) to (3) cells are let out we have (6) showers and give ten (10) minutes showers.  If (9) cells are let out (One section) that we give twenty (20) minutes for showers.  Lopez continued to argue that we (The officers) were prejudice against "Northern Mexicans" and favoring other races by allowing more time.  Lopez refused to see any reasoning in the way that we ran the "Shower Program".

> During the course of my conversation with Lopez I told him that I expected no further problems over the times on the showers and I told him there would be no further episodes or displays that he put on today (December 10, 1999) as I did not want anyone injured over showers.  I also explained that I expected no further posturing that could lead to a violent situation.

5

1

> As this conversation continued Lopez told me that he had a federal lawsuit against CDC and that he was not afraid of violence and if he had to he would resort to such actions if he continued to be treated unfairly.

2

3

> Lopez is aware of this report.

4

5  (Pl.'s Decl., Ex. 41.)  Plaintiff was found guilty of delaying a peace officer.  Defendant Adams

6  was the hearing officer.  Defendant Cook reviewed and approved the guilty finding.  On January

7  20, 2000, plaintiff appealed his disciplinary conviction.  Defendant Cook denied the appeal.

8          On February 2, 2000, defendant Garate issued a lock-up order which removed

9  plaintiff from general population and placed him in administrative segregation.  The reason given

10  for plaintiff's placement in administrative segregation was as follows:

11

> On January 30, 2000 confidential information was received that implicates you as being part of the Northern Structure hierarchy on Facility A.  Inlight [sic] of this information you [are] to be retained in Administrative Segregation pending Administrative review and further investigation conducted by High Desert Gang Investigation Unit . . . .

12

13

14

15  (Pl.'s Decl., Ex. 53.)  Plaintiff appeared before the classification committee eleven times between

16  March 2, 2000 and January 4, 2001.  Defendants Cook, Vanderville, McClure, Babich, Gilliam,

17  and Adams participated in one or more of those hearings.  On March 22, 2000, defendant Morton

18  approved a 120-day extension of plaintiff's placement in administrative segregation.  On July 5,

19  2000, defendant Nergenah approved a second 120-day extension.

20          On October 10, 2000, defendants Shaver and Johnson issued a gang validation

21  chrono listing ten items which were relied upon by prison officials in determining that plaintiff is

22  a member of the Northern Structure prison gang.  (Pl.'s Decl., Ex. 70, Shaver's Am. Response to

23  Req. for Admis., Ex. B.)  On November 15, 2000, defendant special agent Harrison issued a

24  CDC 128-B (Gang Validation/Rejection Review) which concluded that six of the ten items relied

25  /////

26  /////

1  upon met validation requirements.[3]  (Pl.'s Decl., Ex. 73, Harrison's Response to Req. for Admis.,

2  Ex. A.)  On November 28, 2000, plaintiff received a Confidential Information Disclosure Form

3  (CDC 1030) advising him that four confidential sources of information were relied upon in

4  validating him as a gang associate.  (Id., Ex. B.)  Defendant Holmes authored item 5, a CDC

5  128-B dated April 12, 2000, which was one of the items relied upon to validate plaintiff.

6          On November 20, 2000, defendant Bartos issued a rules violation report (Log No.

7  ASU-00-11-0027) charging plaintiff with delaying a peace officer in the performance of his

8  duties.  Defendant Bartos alleged that plaintiff failed to exit the yard on November 13, 2000

9  during yard recall.  (Pl.'s Decl., Ex. 84, attach.)  In the report Bartos wrote:

10       On 11/13/00, at approximately 1130 hours, while performing my
     duties as D6 Yard Observation Officer I ordered yard recall to the
11       CC#3 Northern Hispanic/Black yard.  A[t] approximately 1140
     hours the inmates on the yard informed me that they were refusing
12       to co[me] off of the yard until they spoke to the captain.  I notified
     Correctional Sergeant Thompson and he tried to communicate with
13       the inmates who continued to refuse orders to exit the yard.  At
     approximately 1150 hours, I ordered the inmates off the yard
14       individually by calling their names and CDC numbers in the order
     that they went to yard; Inmate's [sic] LOPEZ, D-86271; PEREZ, J-
15       74133; MONTENEGRO, k-32878; GUZMAN, K-87999;
     SPARKS, H-90171; OWENS, E-92965; BOR, K-4269,
16       WILLIAMS, K-42603; JACKSON, D–47735.  All of the inmates
     on the yard refused to exit.  [At] approximately 1200 hours Captain
17       Briddle addressed the inmates on the yard, After Captain Briddle
     addressed the inmates I again ordered the inmates to exit the yard.
18       At approximately 1300 hours the inmates exited the yard without
     further incident.  All of the inmates addressed in this report are
19       aware of this report.

20  (Id.)  Plaintiff was found guilty of delaying a peace officer in connection with this charge.

21          Finally, on September 23, 2000, plaintiff was placed on contraband watch by

22  defendant Hansen.  (Def.s' Response to Pl.'s State. of Facts, ¶ 108; Compl. ¶ 116.)

23          For the reasons set forth in detail below, the undersigned finds that plaintiff's

24  motion falls far short of demonstrating that there are no triable issue as to the matters alleged in

25

26      [3] The six items were described as:  "Debrief dtd. 07/22/97; Conf. Memo dtd 12/02/98;
Debrief dtd 12/28/99; Debrief dtd 06/08/00; CDC 128-B dtd 4/12/00; CDC 128-B 10/05/00."

1  his pleadings and fails to establish that no reasonable trier of fact could find for defendants as to

2  any of his remaining claims.  Accordingly, the undersigned will recommend that plaintiff's

3  motion for summary judgment be denied.

4  STANDARDS FOR SUMMARY JUDGMENT PURSUANT TO RULE 56

5  Summary judgment is appropriate when it is demonstrated that there exists "no

6  genuine issue as to any material fact and that the moving party is entitled to a judgment as a

7  matter of law."  Fed. R. Civ. P. 56(c).

8  Under summary judgment practice, the moving party

9  always bears the initial responsibility of informing the district court
   of the basis for its motion, and identifying those portions of "the
10  pleadings, depositions, answers to interrogatories, and admissions
    on file, together with the affidavits, if any," which it believes
11  demonstrate the absence of a genuine issue of material fact.

12  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

13  "Where the moving party has the burden of proof, . . . his showing must be

14  sufficient for the court to hold that no reasonable trier of fact could find other than for the

15  moving party."  Calderone v. United States, 799 F.2d 254, 259 (6th Cir.1986) (quoting from W.

16  Schwarzer, Summary Judgment Under the Federal Rules: Defining Issues of Material Fact,  99

17  F.R.D. 465, 487 (1984)).  Thus, on a summary judgment motion, the moving party must

18  demonstrate there is no triable issue as to the matters alleged in its own pleadings.  Id.  This

19  requires the moving party to establish beyond controversy every essential element of its claim or

20  defense.  Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir.1986).  The moving party's

21  evidence is judged by the same standard of proof applicable at trial.  Anderson v. Liberty Lobby,

22  Inc., 477 U.S. 242, 255 (1986).

23  If the moving party meets its initial responsibility, the burden then shifts to the

24  opposing party to establish that a genuine issue as to any material fact actually does exist.  See

25  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

26  establish the existence of this factual dispute, the opposing party may not rely upon the

8

1   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

2   form of affidavits, and/or admissible discovery material, in support of its contention that the

3   dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

4   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

5   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. at 248; T.W.

6   Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that

7   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

8   the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

9          In the endeavor to establish the existence of a factual dispute, the opposing party

10  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

11  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

12  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

13  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

14  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

15  committee's note on 1963 amendments).

16         In resolving the summary judgment motion, the court examines the pleadings,

17  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

18  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

19  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

20  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

21  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

22  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

23  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

24  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

25  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

26  /////

9

1    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2    'genuine issue for trial.'"   Matsushita, 475 U.S. at 587 (citation omitted).

3                                              ANALYSIS

4    I.  Retaliation Claims - First, Second, Eighth, Ninth, and Twelfth Causes of Action

5                 To prevail on his retaliation claims, plaintiff must prove that he was retaliated

6    against for exercising his First Amendment rights and that retaliation was a substantial or

7    motivating factor for the acts or conduct of each defendant.  Mt. Healthy City Bd. of Educ. v.

8    Doyle, 429 U.S. 274, 285-87 (1977); see also Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310,

9    1314-16 (9th Cir. 1989).  Plaintiff must also establish that each of the defendants' alleged

10   retaliatory actions did not advance legitimate penological goals, such as preserving institutional

11   order and discipline.  Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995); Barnett v. Centoni, 31

12   F.3d 813, 816 (9th Cir. 1994); Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985).

13                Plaintiff contends that he was subjected to retaliation for exercising his First

14   Amendment right to file a civil rights action, submit prison grievances and engage in "jailhouse

15   lawyer activities."  (Third Am. Compl. at 14.)  Plaintiff alleges that the rules violation charges

16   brought against him on December 29, 1999 and November 20, 2000 were false, and that on

17   February 2, 2000, he was placed in administrative segregation "based on false and exaggerated

18   grounds."  (MSJ at 4-6, 20.)

19                In their opposition to plaintiff's summary judgment motion, defendants Adams,

20   Babich, Cook, Garate, Gilliam, Harrison, Holmes, Johnson, Martinez, McClure, Morton,

21   Nergenah, and Shaver acknowledge that they were involved in placing plaintiff in administrative

22   segregation and in validating him as a gang member.  However, they argue and have submitted

23   declarations to the effect that their actions were based on a good-faith belief in the information

24   upon which they relied and that their involvement served the legitimate penological goal of

25   identifying and segregating prison gang members who threaten the safety and security of

26   correctional institutions.  (Opp'n at 4, Harrison Decl. ¶ 3 at 2.)  The defendants also present

1  evidence that they were unaware of plaintiff's prior civil rights litigation against staff at CSP-

2  Sacramento and therefore could not have acted in retaliation for plaintiff's engaging in such

3  activity. (Id. at 4-5.)

4          Plaintiff also contends that on May 24, 2000, defendant Vanderville failed to

5  provide him with copies of documents relied upon to retain plaintiff in administrative segregation

6  and that Vanderville did so in retaliation for plaintiff's filing grievances and complaints against

7  CDC employees. (Compl. ¶ 55; Pl.'s SUF ¶ 77.) Defendant Vanderville disputes the contention

8  that plaintiff was denied copies of documents to which he was entitled. (Defs.' Response to Pl.'s

9  SUF ¶ 77, at 20.[4]) In this regard, defendants point to evidence establishing that plaintiff was told

10 that he could obtain documents free of charge by showing they were needed for a legal

11 proceeding or, in the alternative, could obtain copies at cost. (Id.) Moreover, defendants contend

12 that before plaintiff was placed in the security housing unit he had received the requested

13 documents and thus plaintiff cannot establish he was harmed in any way by defendant

14 Vanderville's response. (Opp'n at 5.)

15         Defendants Adams, Bartos, and McKean issued the rules violation charging

16 plaintiff with delaying a peace officer and/or were involved in affirming plaintiff's disciplinary

17 conviction on that charge. These defendants have filed declarations stating that in doing so they

18 acted with a legitimate penological interest of providing a disincentive to those prisoners who

19 would delay correctional officials in the performance of their duties.

20 /////

21

22         [4] Plaintiff's exhibit 64 is a Inmate Request for Interview form dated April 26, 2000, in
   which plaintiff requested copies of "ALL CDC 812's, CDC 812-A's, and CDC 812-B's that are
23 in my file. They are non-confidential (see forms) and are needed as soon as possible for
   litigation purposes." On May 24, 2000, defendant Vanderville responded as follows:
24
           Partially granted! Upon proof from you that your request is for
25         legal proceeding they will be provided. The other way is to Pay 10
           [cents] per copy. You presently have no money on your books &
26         owe the st. $4.38[.]

1    Finally, plaintiff has alleged that on February 2, 2001, defendant Statti retaliated

2  against him when plaintiff and his cell mate were moved to another building which is known for

3  housing protective custody inmates and "snitches." (Compl. ¶ 96.)  Plaintiff contends that this

4  was done by the defendants intentionally to cause him harm.  Defendant Statti has submitted a

5  declaration denying that plaintiff was transferred for filing administrative complaints and stating

6  that he was unaware of plaintiff's previously filed grievances against prison staff.

7    The evidence submitted by defendants requires that plaintiff's motion for

8  summary judgment be denied with respect to his retaliation claims.  Plaintiff has failed to

9  establish the essential elements of his retaliation claims.  Plaintiff has not established beyond

10  controversy that defendants had a retaliatory motive or that their actions involving plaintiff did

11  not serve a legitimate penological interest.  At the very least, defendants' evidence establishes

12  that there are material issues of fact in dispute in this regard.  Therefore, plaintiff's motion for

13  summary judgment on his first, second, eighth, and ninth causes of action for retaliation, should

14  be denied.

15  II.  Contraband Watch - Fifth and Sixth Causes of Action

16    In the Fifth and Sixth causes of action of his Third Amended Complaint plaintiff

17  alleges that defendant Hansen subjected him to inhumane conditions of confinement in violation

18  of the Eighth Amendment when he placed plaintiff on contraband watch without probable cause

19  in violation of the Fourth Amendment.  (Compl., ¶¶ 115-16 at 15.)

20    However, as noted above, defendant Hansen was dismissed from this action on

21  March 14, 2007.  Therefore, these two causes of action are no longer before the court.  Certainly

22  plaintiff is not entitled to summary judgment in his favor as to claims where the only named

23  defendant has been dismissed.

24  III.  Retaliation by False Labeling - Tenth Cause of Action

25    In his tenth cause of action, plaintiff claims that defendant Bartos retaliated

26  against him "for exercising protected activities by calling plaintiff a snitch to other prisoners

1  ('ratting on officers')." (Compl. ¶ 120.) Specifically, plaintiff alleges that in December of 2000,

2  defendant Bartos put plaintiff's safety in jeopardy when he loudly told other prisoners that

3  "'inmates are ratting on officers and pretty soon these T.V.'s will be out of here' while he

4  pointed at plaintiff." (Id. ¶ 77.)

5         Citing the decisions in Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir.

6  1987) and Guant v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987), defendants argue that verbal

7  harassment or abuse is not sufficient to state a § 1983 cause of action and note that plaintiff has

8  neither alleged nor established that he suffered any injury as a result of this alleged incident.

9  (Opp'n at 6.) In addition, defendant Bartos has submitted a declaration in which he denies both

10  making the statement alleged by plaintiff and retaliating against plaintiff in any way. Counsel for

11  defendants argues that, at the very least, the evidence before the court establishes the existence of

12  a triable issue of material fact with respect to this claim against defendant Bartos. The court

13  agrees. Therefore, the court will recommend that plaintiff's motion for summary judgment be

14  denied as to this claim.

15  IV. Claims Naming Defendant Singletary - Fourteenth and Nineteenth Causes of Action

16         In the fourteenth cause of action of his Third Amended Complaint plaintiff alleges

17  that defendant Singletary violated his constitutional rights to due process and equal protection by

18  filing a false affidavit stating that plaintiff had received all of his legal property when such was

19  not the case. (Compl., ¶¶ 124 at 16.) In his nineteenth causes of action plaintiff alleges that his

20  due process rights were violated by this same act of defendant Singletary. (Compl., ¶¶ 133 at

21  17.) Defendant Singletary is the sole defendant named in these two causes of action.

22         Again, as noted above, on March 14, 2007, all of plaintiff's claims against

23  defendants Singletary, Farris and Hansen were dismissed. Because plaintiff's fourteenth and

24  nineteenth causes of action have previously been dismissed by the court, plaintiff is not entitle to

25  judgment in his favor on those claims and his motion for summary judgment should be denied in

26  this respect.

V.  Due Process Claim - Fifteenth Cause of Action

The court has construed plaintiff's fifteenth cause of action as challenging his placement and retention in administrative segregation and his validation as a gang member on due process grounds.  Plaintiff claims that his validation as a gang member was not supported by "some evidence," that any evidence relied upon by prison officials was "fabricated," that false statements were made to keep him in administrative segregation, that he did not receive administrative review of that determination, that he was not given the opportunity to present his defense, that he was denied access to evidence needed to defend himself and that he was not provided "meaningful classification reviews."  (Compl. ¶125.)

A.  Due Process for Placement and Retention in Administrative Segregation

Defendants have submitted evidence indicating that the Institutional Classification Committee recommended plaintiff for transfer to the secured housing unit, that plaintiff received the required forms, was informed of the reasons for the committee's action, was allowed to state his views and advised of his right to appeal.  (Opp'n at 12.)   According to defendants the forms provided to plaintiff advised him that the committee was taking action because he was running the Northern Structure gang on A and C yards, was the gang's "shotcaller" and was recruiting new gang members.  (Id.)  Accordingly, they argue that the evidence before the court establishes that plaintiff received all the process that he was due and that he is not entitled to summary judgment in his favor.

The Ninth Circuit has held that

California's policy of assigning suspected gang affiliates to the Security Housing Unit is  not a disciplinary measure, but an administrative strategy designed to preserve order in the prison and protect the safety of all inmates.  Although there are some minimal legal limitations, see e.g., Toussaint v. McCarthy, 801 F.2d 1080 (9th Cir. 1986) . . ., the assignment of inmates within the California prisons is essentially a matter of administrative discretion.

Bruce v. Ylst, 351 F.3d 1283, 1287 (9th Cir. 2003) (quoting Munoz v. Rowland, 104 F.3d 1096, 1098 (9th Cir. 1997).  Under the holding in Toussaint, when a prisoner is placed in segregation

14

for administrative reasons, due process requires only that prison officials (1) hold an informal nonadversarial hearing within a reasonable time after the prisoner is segregated, (2) inform the prisoner of the charges against the prisoner or their reasons for considering segregation and (3) allow the prisoner to present his views.  Toussaint, 801 F.2d at 1100.

Here, it is undisputed that on February 2, 2000, plaintiff was placed in administrative segregation pending investigation of his prison gang affiliation.  (Pl.'s Dec., Ex. 53.)  Plaintiff received notice of the reason for his placement in administrative segregation.  (Id.) The record also indicates that plaintiff had several classification hearings where his retention in administrative segregation was reviewed.  At the March 2, 2000 administrative segregation review, plaintiff "actively participated in Committee discussion and asked and answered questions appropriately" and denied involvement with the Northern Structure gang.  (Pl.'s Decl., Ex. 57.)  Thus, the evidence before the court establishes that plaintiff received notice, attended several hearings regarding his retention in administrative segregation and was provided an opportunity to express his views.[5]

In light of this evidence, plaintiff has failed to establish that he is entitled to judgment in his favor.  Therefore, his motion for summary judgment on his due process claim concerning his placement and retention in administrative segregation should be denied.

B.  Gang Validation

In Bruce v. Ylst, the Ninth Circuit also held that a prisoner's challenge to prison officials' validating him as a gang member is a due process claim that is subject to the "some evidence" standard set forth in Superintendent v. Hill, 472 U.S. 445, 455 (1985).  Bruce, 351

---

[5]  Although Title 15, § 3338(a) of the California Code of Regulations states that following a prisoner's placement in segregated housing, a classification hearing will be held as soon as possible but in no case longer than 10 days from the date of the placement, there are several exceptions to this procedure which plaintiff does not address in his motion for summary judgment.  For instance, there are exceptions to the procedure if the inmate has been afforded the procedural safeguards of a disciplinary hearing and the case has been assigned to a classification committee for review or if there is a continuing state of emergency.  See § 3338(a) (2) and (4).

1   F.3d at 1287; see also Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (describing this

2   standard as "minimally stringent"); Stewart v. Alameida, 418 F. Supp. 2d 1154, 1167 (N.D. Cal.

3   2006).  In applying this standard the court is not required to "examine the entire record,

4   independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is

5   whether there is any evidence in the record that could support the conclusion.'"  Bruce, 351 F.3d

6   at 1287 (citing Hill, 472 U.S. at 455-56).

7           In their opposition to plaintiff's motion for summary judgment, defendants

8   dispute plaintiff's contention that his gang validation was not supported by "some evidence."

9   Thus, defendant Harrison explains in his declaration the investigation and validation process as

10  follows:

11              Investigations into an inmate's gang involvement are conducted by
                an Institutional Gang Investigations (IGI) officer at the institution
12              where the inmate is housed.  When the IGI officer has gathered
                enough information to present at least three points of validation,
13              the officer forwards the gang validation package to the Special
                Services Unit.  An SSU official verifies that the items meet
14              validation requirements.  Under former California Code of
                Regulations, title 15, section 3378(c)(4), gang identification
15              requires at least three independent source items of documentation
                indicative of association with validated gang members or
16              associates.  One of those items must show a direct link between the
                inmate and a validat[d] gang member of [sic] associate.  Where
17              information is obtained from a confidential informant, the SSU
                official confirms that the material contains some indicia of
18              reliability.

19  (Def.s' P&A, Harrison Decl. at 2.)

20          Counsel for defendants argue that defendant Harrison reviewed the gang

21  validation package and determined that there were at least three independent sources which

22  confirmed plaintiff's gang association or activity.  Although the validation package was criticized

23  in a 2004 audit, defendants argue that the information relied upon for plaintiff's gang validation

24  was not rejected by the audit.  (Def.s' P&A at 11.)  Accordingly, defendants contend that the

25  current record reflects that the "some evidence" standard was met with respect to plaintiff's gang

26  validation.

1   At the very least the sufficiency of the evidence for plaintiff's gang validation by

2   prison officials is in dispute.  Accordingly, plaintiff's motion for summary judgment on this

3   claim should be denied.

4   VI.  State Law Claims - Sixteenth, Seventeenth, and Eighteenth Causes of Action

5   Plaintiff makes no arguments in his motion that he is entitled to summary

6   judgment with respect to his sixteenth, seventeenth and eighteenth causes of action.  Therefore,

7   his motion for summary judgment should be denied with respect to these claims.

8   VII.  Conspiracy - Twentieth Cause of Action

9   In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that

10   he suffered a deprivation of a constitutional right which resulted from the alleged conspiracy.

11   See Woodrum v. Woodward County, Okla., 866 F.2d 1121, 1126 (9th Cir. 1989).  "A conspiracy

12   occurs only when the parties have reached 'a unity of purpose or a common design and

13   understanding, or a meeting of minds in an unlawful arrangement.'"  William Inglis & Sons

14   Baking Co. v. ITT Continental Baking Co., 668 F.2d 1014, 1055 (9th Cir. 1981) (quoting

15   American Tobacco Co. v. United States, 328 U.S. 781, 809-10 (1946)).  Thus, a plaintiff must

16   show that there was an agreement by the defendants to violate his constitutional rights.  See

17   Woodrum, 866 F.2d at 1126; Fonda v. Gray, 707 F.2d 435, 438 (9th Cir. 1983).  While it is not

18   necessary to prove that all participants in a conspiracy know the exact parameters of the plan,

19   they must at least share the general conspiratorial objective.  See Fonda, 707 F.2d at 438; see also

20   Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998).

21   Defendants argue that although plaintiff has offered evidence that he had

22   encounters with some of the defendants over the course of many years, plaintiff has not presented

23   evidence showing that any of the defendants ever agreed to violate plaintiff's constitutional

24   rights.

25   The court concurs.  An agreement among the defendants is an essential element of

26   plaintiff's conspiracy claim.  Plaintiff has not presented evidence in support of his motion

17

1  establishing that no reasonable trier of fact could find for defendants on his conspiracy claim.

2  Therefore, plaintiff's motion for summary judgment should be denied with respect to plaintiff's

3  twentieth cause of action.

4                           OTHER REQUESTS AND MOTIONS

5          Plaintiff has filed a number of additional motions and requests.  They will be

6  addressed below.

7  I.  Plaintiff's Request for Summary Judgment Pursuant to Rule 56(e)

8          On June 18, 2007, plaintiff requested that his motion for summary judgment be

9  granted pursuant to Federal Rule of Civil Procedure 56(e) because defendants had failed to file

10  their opposition as ordered by the court on May 11, 2007. [6]  The court will construe plaintiff's

11  June 18, 2007 request, as a motion for summary judgment.  See Fed. R. Civ. P. 7(b) (1) ("An

12  application to the court for an order shall be by motion . . . .").

13          However, on June 13, 2007 and July 24, 2007, the court granted defendants

14  additional time to file their opposition to plaintiff's motion.  Defendants' opposition was

15  subsequently timely filed.  Accordingly, plaintiff's motion for summary judgment under Rule

16  56(e) should be denied as well.

17  II.  Plaintiff's Requests for Appointment of Counsel

18          In plaintiff's motion for summary judgment and in several subsequent motions, he

19  has requested the appointment of counsel.  For the reasons set forth in the court's October 25,

20  2007 order, those requests for appointment of counsel will be denied.

21  III.  Plaintiff's Motion for Order that Defendants Disclose the Identity and Location of Witnesses

22          On October 11, 2007 defendants filed a motion requesting that the court file under

23  seal three confidential documents from plaintiff's central file in support of defendants' motion

24  for summary judgment.  The documents were relied upon by prison officials with respect to

25  _____

26      [6]  Plaintiff relied on that provision of Rule 56(e) which states "[i]f the adverse party does
    not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

plaintiff's gang validation.  The motion also requested that the court conduct an in camera review of those documents in considering defendants' motion for summary judgment.

On November 28, 2007, plaintiff filed a motion objecting to the court's in camera review of confidential information that was relied upon by prison officials for plaintiff's gang validation and seeking an order requiring defendants to disclose the identity and current location of the sources of information and other persons named in those confidential memorandums.  In this regard, plaintiff speculates that the confidential informants are "unreliable, untrustworthy, and not entitled to any weight or deference" and that he should have the opportunity to confront and cross-examine them.  (Mot. to Review Docs. at 2.)

Defendants oppose the motion, construing it as a discovery request and arguing that the motion is untimely since discovery closed in this action on April 27, 2007 pursuant to the court's scheduling order.

The court will deny plaintiff's request.  Discovery in this action closed long ago under the court's scheduling order.  Accordingly, plaintiff's motion to disclose the identity and location of sources of information reflected in the confidential memorandums is untimely and on that basis alone will be denied.  In addition, the court ordered that the documents at issue be filed under seal for in camera review because defendants asserted that they contained information provided by prison inmates "whose safety would be placed in serious jeopardy if their identity were known by Lopez or any other inmates."  (Notice of Mot. and Mot. to Review Documents In Camera, filed 10/11/07, at 2.)  Under these circumstances, sealing is appropriate.  See Ponte v. Real, 471 U.S. 491, 499 (1985).[7]

_____

[7]  The documents in question were not submitted by defendants in connection with plaintiff's motion for summary judgment which is the subject of these findings and recommendations.  Defendants have not relied on the sealed documents in opposing plaintiff's motion and the court has not considered them in that regard.  Rather, as reflected above, the undersigned has concluded that there exists, at the very least, a legitimate dispute regarding the sufficiency of the evidence for plaintiff's gang validation by prison officials.  If plaintiff wishes he may address whether the court should consider the sealed documents in ruling upon defendants' pending motion for summary judgment.  See Martinez v. Cathey, Civ. F-02-6619

CONCLUSION

In accordance with the above, IT IS HEREBY ORDERED that:

1. Plaintiff's motions for the appointment of counsel, filed on April 18, 2007 with his motion for summary judgment and on August 20, 2007, are denied;

2. Plaintiff's November 28, 2007 motion for an order requiring defendants to disclose the identity and location of sources referred to in confidential memorandums is denied; and

3. Plaintiff's December 5, 2007 notice, construed as a request for an extension of time to file opposition to defendants' motion for summary judgment is granted and plaintiff's opposition filed on December 19, 2007 is deemed timely.

Also, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment filed April 18, 2007, be denied; and

2. Plaintiff's request for summary judgment pursuant to Rule 56(e) filed June 18, 2007, construed by the court as a motion, be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised

/////

/////

/////

---

REC LJO P, 2006 WL 224400 (E.D. Cal. Jan. 30, 2006) (district judge directing magistrate judge to review sealed documents containing information provided by confidential inmate sources in camera and consider them in deciding defendants' motion for summary judgment).

1 | that failure to file objections within the specified time may waive the right to appeal the District
2 | Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
3 | DATED: January 9, 2008.
4 |
5 | _____
6 | DALE A. DROZD
  | UNITED STATES MAGISTRATE JUDGE
7 | DAD:4
  | lope1605.pmsj
8 |